634 A.2d 179

**Merry J. MURTAGH, Spencer Lee Cherashore, Frederick Murtagh et al., Appellants,**

v.

**COUNTY OF BERKS, et al., Appellees.**

Supreme Court of Pennsylvania.

Argued March 8, 1993.

Decided Nov. 10, 1993.

Richard D. Adamson, Adamson & Kennedy, Kutztown, Robert A. Swift, Denis F. Sheils, Kohn, Nast & Graf, P.C., Philadelphia, for appellants.

Stephen G. Rhoads, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Daniel B. Huyett, E. Thomas Henefer, Stevens & Lee, Reading, Donald E. Wieand, Jr., Robert J. Hobaugh, Jr., Weaver, Mosebach, Piosa, Hixson & Marles, P.C., Allentown, Joseph C. Mossop, Frumkin, Shralow & Cerullo, Pottsville, David M. Kozloff, Kozloff, Diener, Payne & Fegley, Wyomissing, for appellees.

Before NIX, C.J., LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, and MONTEMURO, JJ.

FLAHERTY, Justice.

Merry J. Murtagh and other taxpayers appeal an order of Commonwealth Court reversing an order of the Court of Common Pleas of Berks County and remanding with instructions to dismiss the action for lack of subject matter jurisdiction. 144 Pa.Cmwlth. 624, 601 A.2d 1352. The trial court had concluded that it had subject matter jurisdiction over a class action brought by the taxpayers against the County of Berks and other local government units under 42 U.S.C. § 1983[1] challenging the constitutionality of the manner in which property is assessed for real estate tax purposes.

The taxpayers, representing a class of recent purchasers of real estate in Berks County, filed an amended complaint, after exhausting state administrative remedies, against the local governments.[2] They asserted that the local governments had

1. 42 U.S.C. § 1983 (1988) creates a remedy for violations of federal rights committed by persons acting under color of state law. Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. The taxpayers originally sued the County of Berks, the Berks County Board for the Assessment and Revision of Taxes and the Berks County Board of Assessment Appeals. The county and the board filed a number of preliminary objections to taxpayers' complaint. The trial court sustained only one of the objections finding that taxpayers had

adopted a discriminatory "Welcome Stranger" policy. This policy results in the reassessment of recently purchased realty based on the purchase price while making no modifications in the assessment of comparable property not recently sold.[3] The taxpayers alleged that this practice violated their equal protection rights under the Fourteenth Amendment and, because the reassessments were done under color of state law, constituted a violation of 42 U.S.C. § 1983.[4]

The local government defendants filed preliminary objections to the amended complaint based on, among other things, a lack of subject matter jurisdiction. The trial court dismissed both sets of preliminary objections, and certified the issue for appeal pursuant to Pa.R.A.P. 1311(b). Commonwealth Court granted separate petitions for permission to appeal the order, consolidated the appeals, and reversed.

■ The question presented is whether state courts must entertain section 1983 class actions challenging the constitu-

failed to sue the taxing authorities which were indispensable parties. As a result, taxpayers filed an amended complaint joining all taxing authorities in the county, nearly 100 cities, boroughs, townships and school districts, herein referred to as the local governments.

3. The Constitution and statutes of the Commonwealth embody a system of taxation that requires property to be taxed at a uniform rate according to its estimated actual market value. *See* Pa. Const. art. VIII, § 1; 72 Pa.S. § 5020–101 *et seq.* and § 5342 *et seq.*

The Commonwealth Court recently invalidated a county tax assessment scheme where it found that the county violated the uniformity requirement of the state Constitution and equalization requirement of the statute governing assessments by third-class counties. *See City of Lancaster v. County of Lancaster,* 143 Pa.Cmwlth. 476, 599 A.2d 289 (1991).

4. The substance of the taxpayers' complaint is that the "Welcome Stranger" policy of Berks County causes *de facto* discrimination and violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Taxpayers cite, as authority for their claim, *Allegheny Pittsburgh Coal Co. v. County Commissioner of Webster County,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989). There, the Supreme Court held that the *de facto* discrimination engendered by a "Welcome Stranger" policy in a "current value" taxation system violated said Equal Protection Clause. *See also Nordlinger v. Hahn,* —— U.S. ——, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

Given the procedural posture of this case, it is inappropriate to comment on the merits of the taxpayers' case.

tionality of a county's tax assessment procedure where plaintiffs have not exhausted state administrative and judicial remedies. The local governments contend that the trial court does not have subject matter jurisdiction over such a section 1983 action, arguing that state courts should follow the direction of the federal courts and refrain from entertaining such suits where there are plain, adequate and complete state administrative and judicial remedies.[5]

Federal courts have routinely refrained from interfering with the administration of state taxes due to the Tax Injunction Act, 28 U.S.C. § 1341, and principles of comity. In *Fair Assessment In Real Estate v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), the Supreme Court of the United States ruled that actions for injunctive relief and monetary damages from a state property assessment procedure are barred in the federal courts by the principle of comity. That court said that comity concerns motivated congress to pass the Tax Injunction Act which prohibits a district court from enjoining, suspending or restraining the assessment, levy or

5. The local governments further argue that some state courts have refrained from entertaining such suits. *See, e.g., Backus v. Chilivis,* 236 Ga. 500, 224 S.E.2d 370 (1976). Since these cases pre-date important Supreme Court cases discussed *infra,* we do not find them probative of the issue presented.

Courts that do require their courts to hear section 1983 actions before exhaustion of state statutory remedies include Mississippi and New Jersey. *Burrell v. Mississippi State Tax Commission,* 536 So.2d 848 (Miss.1988) and *Bung's Bar & Grille, Inc. v. Florence Township,* 206 N.J.Super. 432, 502 A.2d 1198 (1985). In *Burrell,* the court held that state courts must hear taxpayers' actions brought pursuant to Section 1983, because they have concurrent jurisdiction with the federal courts, because the Supremacy Clause of the United States Constitution requires that state courts enforce the valid enactments of Congress, of which section 1983 is one, and because the principle of comity did not apply to state courts. In *Bung's Bar,* the Superior Court held that the state courts must entertain section 1983 actions, since New Jersey law demands that all issues of a controversy be included at the same time in a lawsuit and the available administrative remedy did not allow for civil rights claims. Neither court addressed the exhaustion of remedies argument.

*See also Nutbrown v. Munn,* 311 Or. 328, 811 P.2d 131 (1990); *Hogan v. Musolf,* 163 Wis.2d 1, 471 N.W.2d 216 (1991), and *L.L. Bean Inc. v. Bracey,* 817 S.W.2d 292 (Tenn.1991). In these cases, section 1983 actions were entertained by state courts.

collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.[6] 454 U.S. at 103, 102 S.Ct. at 179, 70 L.Ed.2d at 275. By enacting that statute, congress recognized that the autonomy and fiscal stability of states survive best when their tax systems are not subject to scrutiny in federal courts. 454 U.S. at 102–03, 102 S.Ct. at 179, 70 L.Ed.2d at 275. The Supreme Court of the United States also ruled that a similar action for monetary damages is likewise barred as long as the state provides for plain, adequate and complete remedies, because such actions are just as intrusive to the states' revenue collection systems as the actions for injunctive relief specifically barred under the Tax Injunction Act. 454 U.S. at 114–15, 102 S.Ct. at 185, 70 L.Ed.2d at 282. The court then stated that such taxpayers are to seek protection of their federal rights by state remedies provided that those remedies are plain, adequate, and complete and may ultimately seek review of the state decisions in the Supreme Court of the United States. 454 U.S. at 116, 102 S.Ct. at 186, 70 L.Ed.2d at 283.[7]

State courts are not bound by *Fair Assessment* and its progeny. The Tax Injunction Act applies by its very terms to preclude federal courts, not state courts, from enjoining state tax schemes. Therefore, there is no danger of federal court interference or misunderstanding. Likewise, abstention based on comity has no application when a section 1983 cause of action is brought in state courts because there is no risk of federal court interference.[8]

6. The Tax Injunction Act of 1937, 28 U.S.C. § 1341, provides that: The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.

7. The Court discerned no significant difference between remedies which are "plain, adequate, and complete" as the phrase is used to articulate the doctrine of equitable constraint under comity, and those that are "plain, speedy and efficient," within the meaning of the Tax Injunction Act. *Fair Assessment,* 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8, 70 L.Ed.2d at 283 n. 8.

8. On the other hand, the federal courts have followed *Fair Assessment* in cases similar to the Taxpayers' case. *e.g., Sunderland Properties, Inc. v. County of Berks,* 750 F.Supp. 704 (E.D.Pa.1990). There, a challenge

The local governments nonetheless argue that the state courts should abstain from hearing section 1983 claims until the taxpayers have exhausted state administrative and judicial remedies. They appear to argue that section 1983 plaintiffs in state court should be no better off than section 1983 plaintiffs in federal court. Therefore, they should be required to exhaust the administrative and judicial remedies set forth in the Third Class County Assessment Law (TCCAL)[9] and in the General County Assessment Law (GCAL).[10] Under both

to the county's "Welcome Strangers" policy was dismissed by the court based upon comity and the Tax Injunction Act of 1937, 28 U.S.C. § 1341.

**9.** Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. §§ 5342–5350. This act does not have an official name but is commonly referred to as the Third Class County Assessment Law.

The Third Class County Assessment Law creates a three-member board of assessment appeals (board) in each county. Aggrieved taxpayers appeal to the board and then to the county common pleas court. The board must cause annual assessment of property within its jurisdiction. Section 1 and 3 of the TCCAL; 72 P.S. §§ 5342, 5344. Property owners subject to these assessments must be duly notified. Section 8(b) of the TCCAL; 72 P.S. § 5349(b). A property owner who is aggrieved by any assessment, whether or not the assessment has been changed from the previous year, has a right to appeal to the board for relief. Section 8(c) of the TCCAL; 72 P.S. § 5349(c). When such an appeal has been filed, the board must notify each person and each taxing district which has an interest and has the power to compel the attendance of witnesses and the furnishing of documents. Section 8(d) of the TCCAL; 72 P.S. § 5349(d).

Section 9 of the Third Class County Assessment Law further provides that the aggrieved property owner may appeal the final decision of the board to the county court of common pleas. 72 P.S. § 5350. The court of common pleas will proceed *de novo*. *Appeal of U.S. Steel Corp.*, 436 Pa. 435, 260 A.2d 779 (1970).

**10.** Act of May 22, 1933, P.L. 853 *as amended*, 72 P.S. §§ 5020–601—5020–602.

The General County Assessment Law applies to Berks County, where it is not inconsistent with the Third Class County Assessment Act. Art. I, § 105 of the GCAL; 72 P.S. § 5020–105. *Truck Terminal Motels of America, Inc. v. Berks County Board of Assessment Appeals*, 127 Pa. Cmwlth. 408, 561 A.2d 1305 (1989), petition for allowance of appeal denied, 525 Pa. 652, 581 A.2d 576 (1990). It has a procedural remedy similar to that of the Third Class County Assessment Act. The General County Assessment Law provides that the board in each county shall hear property owners' appeals of tax assessments. Art. V, § 511 of the GCAL; 72 P.S. § 5020–511. The decision of the board can then be appealed to a court of common pleas for a *de novo* proceeding, with

schemes, a property owner who is aggrieved by any property tax assessment has a right to appeal to a board of assessment appeals, and then to the court of common pleas which is to proceed *de novo*. In light of the resolution of this case, we need not and do not decide here whether the state statutory remedies are plain, adequate and complete in the context of a section 1983 class action.[11]

 The Supreme Court of the United States has consistently affirmed the duty of state courts to entertain section 1983 actions, except where a valid excuse exists, regardless of whether plaintiffs have exhausted state administrative and judicial remedies. Municipalities may be sued under section 1983 when a municipal policy, ordinance, regulation or custom inflicts constitutional injury. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Since 1980, the Supreme Court of the United States has made clear that state courts have concurrent jurisdiction with federal courts to hear section 1983 claims. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). When state courts entertain federal causes of action, the rights of, and the defenses to, a federal

further appeals to the Superior and Supreme Courts. Art. V, 518.1, 518.2, and 519 of the GCAL; 72 P.S. §§ 5020–518.1–2, 5020–519.

**11.** Taxpayers contend that the state remedies are not plain, adequate and complete because they are precluded from seeking an award of attorneys' fees via the fee shifting policy embodied in §§ 1983 and 1988. We need not address this issue in light of the resolution of this case.

It is noted that the federal courts in Pennsylvania have consistently ruled that both of these laws provide a taxpayer a plain, adequate, and complete remedy. *See, e.g., Garrett v. Bamford*, 582 F.2d 810 (3d Cir.1978). The *Garrett* court held that the district court properly abstained from entertaining a section 1983 class action challenging alleged discriminatory property tax assessments brought by property owners in Berks County. The court held that the class action was precluded in federal court under the Tax Injunction Act, since the Third Class County Assessment Law, affording administrative appeal with judicial review to a class, provided them with a plain, speedy and efficient remedy. *Id.* at 819.

*Garrett* predated significant Supreme Court rulings in section 1983 litigation and did not address the attorneys' fees issue. Therefore, it would have little probative value to this case were we to address the issue of whether the state remedies are plain, adequate and complete.

cause of action are defined by federal law so that the outcome of federal causes of action would be the same, regardless if decided in a state or federal forum. *Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332, 353 (1990).[12] Also, in the absence of a valid excuse, state courts have no discretion to decline to accept jurisdiction when the parties and controversy are properly before the state court. 496 U.S. at 369, 110 S.Ct. at 2439, 110 L.Ed.2d at 348.

A valid excuse may exist when a state court refuses jurisdiction because it has no competent court to hear the case or because of a neutral state rule of judicial administration, unless that rule is preempted by federal law. *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the state create a court competent to hear the case in which the federal claim is presented. *Howlett,* 496 U.S. at 372, 110 S.Ct. at 2441, 110 L.Ed.2d at 350–351. Neutral rules of judicial administration have included those authorizing dismissal of both federal and state claims where neither the plaintiff nor the defendant was a resident of the forum state, *Douglas v. New York, N.H. & H.R. Co.,* 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1929), where the cause of action arose outside of the court's territorial jurisdiction, *Herb v. Pitcairn,* 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1945), or where the doctrine of *forum non conveniens* appropriately applied. *Missouri ex rel. Southern R. Co. v. Mayfield,* 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950).

Neutral state rules of judicial administration appear to be preempted in section 1983 cases, however, in situations where the plaintiff and defendant are residents of the forum state

**12.** The Court in *Howlett* reaffirmed that federal law is enforceable in state courts because the Constitution and laws passed pursuant to it are as much laws in the states as laws passed by the state legislature. 496 U.S. at 367, 110 S.Ct. at 2438, 110 L.Ed.2d at 347. The Court held that a state-law sovereign immunity defense is not available to a school board in a section 1983 action brought in a state court that otherwise has jurisdiction when such a defense would not be available if the action were brought in a federal forum. 496 U.S. at 361–83, 110 S.Ct. at 2434–47, 110 L.Ed.2d at 343–58.

and the cause of action arises in the forum state. The Supreme Court of the United States has ruled that section 1983 plaintiffs are not required to exhaust state administrative remedies before instituting section 1983 suits in federal courts or state courts. *See Patsy v. Board of Regents of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) and *Felder v. Casey, supra*, respectively. In *Felder*, nine months after being allegedly beaten by Milwaukee police officers who arrested Felder on a disorderly conduct charge that was later dropped, Felder filed a state court action against the city and certain of the officers under section 1983. He alleged that the beating and arrest were racially motivated and violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. The officers moved to dismiss the suit because of Felder's failure to comply with Wisconsin's notice-of-claim statute. The statute provided, in part, that: before suit may be brought in state court against a state or local governmental entity or officer, the plaintiff, within 120 days of the alleged injury, must notify the defendant of the circumstances and amount of the claim and the plaintiff's intent to hold the named defendant liable; the defendant then had 120 days to grant or disallow the requested relief; and the plaintiff must bring suit within six months of receiving notice of disallowance. 487 U.S. at 134–37, 108 S.Ct. at 2305–06, 101 L.Ed.2d at 135–37.

The *Felder* Court held that when a section 1983 action is brought in the state court, Wisconsin's notice-of-claim statute conflicted in both its purpose and effect with section 1983's remedial objectives and was preempted pursuant to the Supremacy Clause. The court explained that while states retain the authority to prescribe the rules and procedures governing suits in their courts, that authority does not permit states to place conditions on the vindication of a federal right. Rather, congress meant to provide individuals immediate access to the federal courts and did not contemplate that those who sought to vindicate their federal rights in state courts could be required to seek redress in the first instance from the state officials whose hostility to those rights precipitated their inju-

ries. 487 U.S. at 147–53, 108 S.Ct. at 2311–14, 101 L.Ed.2d at 143–47.

The *Felder* court found no merit to the claim that the exhaustion requirement imposed by the state statute is essentially *de minimis* because the statutory settlement period entailed none of the additional expense or undue delay typically associated with administrative remedies, the statutory scheme did not eliminate a claimant's right to seek full compensation through suit or the statutory scheme was designed to sift out specious claims. That court emphasized that section 1983 actions "belong in court" and exist independent of any other legal or administrative relief that may be available as a matter of federal or state law except where congress has expressly imposed an exhaustion requirement.[13] The court said that any scheme designed to sift out "specious claims" from the stream of complaints that can inundate local governments in the absence of sovereign immunity is "manifestly inconsistent" with the central objective of the civil rights statutes. 487 U.S. at 148–50, 108 S.Ct. at 2312–13, 101 L.Ed.2d at 144–45.

We now address the critical question of whether the common pleas courts of this Commonwealth must entertain section 1983 cases without requiring the exhaustion of state administrative and judicial remedies. We do not have direction from the United States Supreme Court on this issue; rather, we have competing lines of cases and are asked to resolve the apparent conflict.

One may argue that, according to U.S. Supreme Court precedent, the taxpayers should be no better off in state court than they are in federal court with regard to a section 1983 case challenging the constitutionality of a property tax assessment procedure. According to *Fair Assessment* and its prog-

13. Congress did establish an exhaustion requirement for a specific class of section 1983 actions, those brought by adult prisoners challenging the conditions of their confinement, in the Civil Rights of Institutionalized Persons Act of 1980, 94 Stat. 353, 42 U.S.C. § 1997e. In *Felder*, the Court stated that congress, in enacting this statute, expressly recognized that it was working a change in the law. 487 U.S. at 149, 108 S.Ct. at 2312, 101 L.Ed.2d at 144.

eny, plaintiffs must exhaust state administrative and judicial remedies in a property tax assessment case before bringing a section 1983 action in federal court. Therefore, the argument continues, the taxpayers must also exhaust state administrative and judicial remedies before bringing a section 1983 action challenging the constitutionality of a property tax assessment procedure in state court.

One may also argue that, according to U.S. Supreme Court precedent, this court cannot require exhaustion of state statutory remedies. If an exhaustion requirement were imposed on the taxpayers, then, like *Felder*, the state has a procedure that places conditions on the vindication of a federal right in state court. This is so even though the state's statutory scheme does not eliminate a claimant's right to seek full compensation through suit. Further, we are mindful that the taxpayers' case has another aspect that was not present in *Felder*, which is that exhaustion of state administrative and judicial remedies in the taxpayers' case may entail the additional expense and delay typically associated with state statutory remedies without according the taxpayers the relief sought. *See, Borough of Greentree v. Board of Property Assessment, Appeals and Review of Allegheny County*, 459 Pa. 268, 328 A.2d 819 (1974).[14]

Here, the record reflects that the taxpayers have exhausted state administrative procedures and, without pursuing their state judicial remedies, seek to maintain a section 1983 class action. In this case, *Felder* and *Howlett* command the Court of Common Pleas of Berks County to exercise jurisdiction over a section 1983 action without requiring the complete exhaustion of state statutory remedies. While exhaustion of

14. In *Greentree*, this Court ruled that courts of common pleas have equitable jurisdiction to hear cases charging that the Assessment Act provision permitting triennial assessments violated the uniformity clause of the State Constitution and the equal protection clause of the Federal Constitution, where the statutory appeal procedure appearing in the Assessment Act would be of little, if any, utility in determining constitutionality of the provision and where any benefit derived from filing individual appeals with the county board of property assessment would be far outweighed by the inconvenience, delay and expense involved.

state statutory remedies is required in federal courts, exhaustion is not required in the courts of this state insofar as the action is a class action challenging the constitutionality of a system of property tax assessment. This is so because the principle of comity that causes a federal court to refrain from exercising jurisdiction over section 1983 tax assessment cases has no relevance to a class action challenging, in state court, the constitutionality of a system of property tax assessment.

This creates the anomalous situation that plaintiffs have quicker access to state courts with respect to these types of section 1983 class actions than to the federal courts. This result does not appear to conflict with any U.S. Supreme Court decision because the vindication of a federal right is not shackled by state rules of judicial administration. This resolution also does not appear to conflict with precedent of this Court. *See Borough of Greentree, supra.* Further, this resolution will not, as local governments contend, disrupt state and local tax administration because, as the taxpayers argue, constitutional challenges such as the taxpayers' class-action challenge probably will, in the long run, significantly reduce the inconvenience, inefficiency, delay and expense involved in countless individual lawsuits over the same issue in many different administrative and judicial forums.[15]

On the other hand, if we were to refuse access to the courts before exhaustion of statutory remedies with respect to this type of class action, such refusal would conflict directly with U.S. Supreme Court directives. Therefore, we hold that where plaintiffs are a class of the taxpayers challenging the constitutionality of the system by which property tax assessments are made, they can maintain their section 1983 suit in

15. The local governments, on page 27 of their brief, state that because taxpayers do not press the issue on appeal, it is "undisputed that they can secure consideration of the constitutional objections before the board of assessment appeals and through *de novo* review in the court of common pleas." The local governments, however, argue the point no further, perhaps in recognition that the likelihood that the issue would be fully addressed, on the administrative side, by the very people who depend on the continued existence of the present scheme of things is quite small indeed.

common pleas court without first exhausting their statutory remedies.[16]

The Court of Common Pleas of Berks County properly determined that it had subject matter jurisdiction in this case and this matter is remanded to Commonwealth Court with direction to address the local governments' contentions contained in their appeal at 625 C.D. 1991.

Order of the Commonwealth Court reversed, and case remanded.

LARSEN, J., did not participate in the decision of this case.

MONTEMURO, J., files a concurring opinion.

CAPPY, J., files a dissenting opinion.

MONTEMURO, Justice, concurring.

By implication, the majority acknowledges that our courts have an obligation to entertain a 1983 challenge to a state tax despite the existence of a statutory remedy. Because I believe that our courts have always had such an obligation, I join the Opinion of the Court.

CAPPY, Justice, dissenting.

I respectfully dissent from the majority's holding that the Appellant class of taxpayers, who seek to challenge the constitutionality of the property tax assessment system, may maintain their action under 42 U.S.C. § 1983 in common pleas court without first exhausting their state statutory remedies. Although I do not disagree with the majority's background summary of the relevant law, I differ with the majority's resolution of the "apparent conflict" in the United States Supreme Court's "competing lines of cases." (Majority opinion at 184.)

16. We wait for another day to address the issue of whether an individual plaintiff, as opposed to a class of plaintiffs, can maintain a section 1983 action in common pleas court without exhausting state statutory remedies where the challenge is to an individual assessment and not a challenge to the entire system of property tax assessment.

First, it must be remembered that section 1983 creates a *federal* cause of action. The Supreme Court in *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), specifically held that this federal action requires exhaustion of state administrative and judicial remedies due to the sensitive nature of state tax issues. It makes no sense to undercut the Court's interpretation of federal law. Further, I believe that interests of comity[1] dictate that state courts defer to the federal framework carefully established by the United States Supreme Court, just as the federal court in *Fair Assessment* deferred to the state courts in fashioning a rule that would not disrupt a carefully fashioned state tax scheme. The majority's approach creates the anomalous result of encouraging federal claimants to flock to state courts to pursue section 1983 actions, when the precise purpose of the federal rule is to ensure that state courts may deal with the matter under state law first.

Moreover, the majority's approach virtually eliminates any opportunity for the state courts to examine the state tax scheme under the laws or Constitution of the Commonwealth. The precise concern for the sensitive nature of state tax schemes, which motivated the United States Supreme Court in *Fair Assessment*, should *a fortiori* motivate state courts to examine those schemes under state law first. The majority's approach obliterates this opportunity and, again, produces the incongruous result of creating a stronger, virtually exclusive federal forum for section 1983 claims in state court—rather than in federal court where the action should take priority.

The Supreme Court's decision in *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), in no way compels the majority's result. It must be remembered that for the state courts to require exhaustion of state remedies as a prerequisite to a section 1983 action would only be to impose

1. It is important to remember that comity works both ways. Judicial comity is "[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect." BLACK'S LAW DICTIONARY 267 (6th ed. 1990).

upon plaintiffs in state court the same requirement that would be imposed upon them in federal court. *Felder* simply prohibits the application of a state rule where the rule conflicts with the remedial objectives of section 1983 and its enforcement will "frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court." 487 U.S. at 138, 108 S.Ct. at 2307. Ironically, the majority's refusal to impose an exhaustion requirement creates just such a situation where different outcomes will be reached in section 1983 litigation "based solely on whether the claim is asserted in state or federal court."

I believe that, in the circumstances of this case, the Court should defer to the framework established by the federal courts. Therefore, I must respectfully dissent.