**Thomas & Katherine KOWENHOVEN, Robert & Michelle DeWitt, and Daniel & Carol Holtgraver, Appellants**

**v.**

**The COUNTY OF ALLEGHENY and the Board of Assessment of Allegheny County.**

Commonwealth Court of Pennsylvania.

Argued Feb. 4, 2004.

Decided April 13, 2004.

John M. Silvestri, Pittsburgh, for appellants.

Isobel Storch, Pittsburgh, for appellees.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Thomas and Katherine Kowenhoven, Robert and Michele DeWitt, and Daniel and Carol Holtgraver (Taxpayers) appeal an order of the Court of Common Pleas of Allegheny County that sustained preliminary objections filed by the County of Allegheny and the Board of Property Assessment Appeals and Review of Allegheny County (Board), resulting in the dismissal by the trial court of Taxpayers' class action complaint. Taxpayers' complaint sought declaratory and injunctive relief, asserting that the County's assessment practices improperly permitted, and in fact encouraged, property assessment hearing officers and the Board to consider evidence obtained outside of the record developed before hearing officers, and thereby violated Taxpayers' due process rights. The complaint also sought damages and attorney's fees under 42 U.S.C. § 1983.

The Board filed preliminary objections including the claim that an adequate statutory remedy exists. The trial court dismissed the complaint, agreeing with the Board's contention as to a statutory remedy. Taxpayers here contend that the trial court erred in concluding that an adequate statutory remedy exists.

Repeated here are Taxpayers' pertinent factual averments. Section 207 of Chapter 7 of the Allegheny County Administrative Code, relating to the Board's powers, provides the Board with the authority to engage hearing officers or appoint Board members to conduct hearings on assessment appeals. The hearing officer must provide a report, including findings of fact, conclusions of law and a recommendation, to the full Board. Section 207.07 E. As noted by Taxpayers in Paragraph 7 of their complaint, Section 5 of Board Rule IV indicates that, when a majority of Board members disagree regarding a hearing officer's recommendation, the full Board must review the evidence submitted at the hearing, and any post-hearing submissions, namely proposed findings of fact and conclusions of law requested by the hearing examiner, and should apply accepted valuation methodology[1] in reaching a decision. Taxpayers refer to a Board memo relating to appeal procedures. The memo, as quoted (emphasis added) in the complaint, states in pertinent part:

When making recommendation, **Hearing Officers and Case Reviewers are permitted to accept or discount evidence** presented at a hearing **based on their professional valuation judgment, knowledge of the area** and/or verification of [data] in [Sabre market Data Analysis].

Hearing Officers and Case Reviewers are *not* to reappraise the property or submit post-hearing evidence. **A Hearing Officer or Case Reviewer who has personal knowledge of an area or more suitable sales comparables to those introduced at a hearing may supply this information for the Board's consideration.**

The terms of that memo indicate that a hearing officer, in rendering a recommendation, may consider more than the evidence validly admitted at a hearing. The second paragraph quoted suggests that the Board approves of hearing officers submitting their own personal understanding or beliefs concerning area values for the Board to consider in rendering its final decision. In this case, Taxpayers contend that such practice violates their due process right to a fair hearing, because, when

---

1. Specifically, such methodology must be "consistent with the standards of nationally recognized assessment and appraisal industry organizations." Board Rule IV, Section 5.

evidence not offered on the record is considered by the Board, they are precluded from exercising the rights that are afforded in a due process hearing, most pertinently, the right to cross-examine witnesses, or the opportunity to be heard. In their individual cases, Taxpayers point to indications in the record, such as post-it notes, that support their contention that the Board considered such evidence in rendering its decisions.

Taxpayers rely upon the United States Supreme Court decision in *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), for the proposition that due process is required at every level of judicial proceedings, even quasi-judicial proceedings such as those before the Board. In that case, Ward was convicted by the Mayor of the Village of Monroeville of two traffic offenses and fined. Ward asserted that the system, which allowed an executive official——the mayor——to sit as a judge in the proceedings, violated his due process rights. The Supreme Court agreed, and rejected Monroeville's argument, that the right to appeal de novo to a trial court corrected any unfairness a party experienced by allowing convictions by an interested executive to conduct a hearing at the first level of judicial proceedings. The Court stated

> This "procedural safeguard" does not guarantee a fair trial in the mayor's court; there is nothing to suggest that the incentive to convict would be diminished by the possibility of reversal on appeal. Nor, in any event, may the State's trial court procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication.

409 U.S. at 61, 93 S.Ct. 80.

The trial court here concluded that, unlike *Ward,* where the complainant challenged the constitutionality of the underlying statute on its face, Taxpayers here are essentially challenging the **application** of the statute to the assessment of their property. We note that the pertinent sections of the Administrative Code, quoted above, nowhere suggest that either hearing officers or the Board, in reviewing a hearing officer's recommendation, may consider evidence from outside the record. However, as also quoted above, the Board **memo** makes just such a suggestion, by allowing hearing officers and case reviewers to supply information regarding comparable sales in an area to Board members, when they have "personal knowledge of an area or more suitable sales comparables to those introduced at a hearing." The memo also suggests that officers may reject admitted evidence based upon their personal knowledge. Although such a process appears to fly in the face of procedural due process notions, which require that parties be afforded an opportunity to confront the witnesses against them, we must agree with the trial court that, unlike *Ward,* the challenge Taxpayers make here is to the implementation or interpretation by the Board of its powers under the Administrative Code.

The trial court, while recognizing the right to seek equitable relief when a party challenges the constitutionality of assessment legislation, noted that the Pennsylvania Supreme Court has limited that right to situations where a party raises a substantial constitutional question and there is no statutory remedy or the statutory remedy is inadequate. *Borough of Green Tree v. Board of Property Assessment, Appeals and Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974).

In *Jordan v. Fayette County Board of Assessment Appeals,* 782 A.2d 642 (Pa. Cmwlth.2001), this Court looked to the Supreme Court's decision in *Borough of Green Tree,* and rejected an attempt by

taxpayers to obtain equitable relief where they argued that the assessment authority's use of different assessment methods violated the Equal Protection Clause as well as the uniformity clause of the Commonwealth's constitution.

In *Borough of Green Tree*, the Supreme Court thoroughly analyzed the existing law regarding the question of when equity lies to address challenges to the constitutionality of a taxing scheme. The Court there concluded that equity lies only when a constitutional challenge is raised and there is no statutory remedy or the remedy is inadequate. The Court included the following quotation from *Bliss Excavating Co. v. Luzerne County*, 418 Pa. 446, 451, 211 A.2d 532, 535 (1965): "The statutory procedure need not be followed only if it is inadequate to the task of resolving plaintiffs' objections or its pursuit will cause them irreparable harm."

The Court, in considering whether a statutory remedy is adequate looked to the role of the administering agency, and recognized that such agencies generally do not function to determine the constitutionality of statutes. Their primary function is to use their expertise in reviewing conflicts involving the particular subject matter over which they have such expertise, which, in the case of assessment authorities is, generally stated, familiarity with methods to determine property value. They are not presumed to have the expertise necessary to consider whether a statute is constitutional. Thus, the Supreme Court reasoned, "the more direct the attack on a statute, the more likely it is that exercise of equitable jurisdiction will not damage the role of the administrative agency charged with enforcement of the act, nor require, for informed adjudication, the factual fabric which might develop at the agency level." 459 Pa. at 281, 328 A.2d at 825. The Court concluded that the

constitutional challenge at issue was so direct that the benefit of judicial participation via equity far outweighed the delay, inconvenience, and expense involved with individual appeals. *Id.*

Although we recognize that the Supreme Court in *Borough of Green Tree* did not consider the question of whether a statutory remedy can ever be adequate when the process at issue violates a party's due process right to a neutral adjudicator, as in *Ward*, we do not agree with Taxpayers that *Ward* supports their argument that the present statutory remedy is inadequate. While that decision does stand for the proposition that due process dictates that a party have a neutral, impartial adjudicator in the first instance, the challenge in that case was clearly a challenge to the statute that created the situation. In this case, the taxing statute has not created a system that violates Taxpayers' due process rights. Unlike *Ward*, the statute does not set up a system where the adjudicatory officer or Board has an interest in the outcome of an assessment appeal. There is no claim here that the hearing officers or the Board are interested in a particular outcome. Rather, the Board's implementation of the taxing statute may have resulted in a system that enables the Board to consider evidence outside the record.

In an appeal de novo, Taxpayers will have an opportunity to challenge any improperly considered evidence. They may assert that the improper evidentiary matters approved in the Board's memo are not permitted under the statute or the constitution. In such appeal the trial court will appoint a Board of Viewers, Allegheny County Rule of Court A503(h), which will be required to reject that improperly considered evidence and base a decision only upon evidence properly offered to the hearing officer which Taxpayers had an

opportunity to challenge, or such additional evidence that may be then presented. Unlike the driver in *Ward* who had no opportunity to present his case to an impartial adjudicator, the hearing officer in this case is not necessarily partial to one party, or an advocate for the Board. Rather, the Board's memo simply injected an improper element into the process of adjudication. Because *Ward* involved a statutory scheme that on its face placed a non-neutral person in a judicial capacity, and because the hearing officer in this case is not by statute an adjudicator with a personal interest in the outcome of an assessment appeal, we cannot conclude that the *Ward* holding, i.e., that subsequent de novo review is insufficient, applies in this case.

■ As noted above, under the local rules applicable in this case, Taxpayers have the opportunity to claim in an appeal to common pleas that the implementation of the process as enunciated in the Board's policy memo results in a violation of their procedural due process rights, or more simply to assert that the Board committed an error of law by considering such evidence. Taxpayers have an opportunity to request discovery in a proceeding before a Board of Viewers, by filing a petition with the real estate tax appeal judge. If the judge rules against a taxpayer, the taxpayer may raise that decision as an error on appeal. Accordingly, we conclude that Taxpayers have an adequate statutory remedy to address their claims regarding the Board's assessment appeal process.

■ Taxpayers also assert that the trial court erred in rejecting the claims they raise under 42 U.S.C. § 1983. However, we agree with the trial court's conclusions with regard to this claim. As the court noted, this Court has recognized that the United States Supreme Court's decision in *National Private Truck Council, Inc. v.*

*Oklahoma Tax Commission*, 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), undermined a previous decision of our Supreme Court in *Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179 (1993), *cert. denied*, 511 U.S. 1017, 114 S.Ct. 1397, 128 L.Ed.2d 71 (1994), wherein the Court held that Taxpayers were entitled to bring a constitutional challenge to a county's tax system under § 1983, without first exhausting their administrative remedies. *Murtagh v. County of Berks*, 715 A.2d 548 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, 557 Pa. 656, 734 A.2d 863 (1999). In our 1998 *Murtagh* decision we cited *National Private Truck Council* for the proposition that a taxpayer may not maintain a claim raised under § 1983 where the state's administrative process provides a taxpayer with an adequate remedy. As noted by the trial court, this Court confirmed this holding in *Jordan*, cited above. Based upon these decisions, and upon our conclusion above that an adequate statutory remedy exists, we conclude that the trial court did not err.

### *ORDER*

AND NOW, this 13th day of April 2004, the order of the Court of Common Pleas of Allegheny County is affirmed.

FRIEDMAN, J., concurs in part, dissents in part, and files opinion.

Concurring and Dissenting OPINION BY Judge FRIEDMAN.

I agree that the Court of Common Pleas of Allegheny County (trial court) properly dismissed the section 1983 claim filed by Thomas and Katherine Kowenhoven, Robert and Michelle DeWitt and Daniel & Carol Holtgraver (together, Taxpayers) against the County of Allegheny and the Board of Property Assessment Appeals and Review of Allegheny County (Board).

However, I disagree that the trial court properly dismissed Taxpayers' equitable claims on grounds that Taxpayers have an adequate legal remedy.

Taxpayers filed a class action lawsuit against the Board seeking declaratory and injunctive relief. Taxpayers alleged that the Board violated Taxpayers' due process rights by considering non-record evidence in deciding their tax assessment appeals. The hearing officers presiding over Taxpayers' appeals provided the Board with the non-record evidence pursuant to a Board memo dated April 9, 2002. The memo stated that a hearing officer "who has personal knowledge of an area or more suitable sales comparables to those introduced at a hearing may supply this information for the Board's consideration." (R.R. at 7a.) In Taxpayers' appeals, the hearing officers attached post-it notes to their reports making assessment recommendations to the Board based on non-record evidence.

The trial court dismissed Taxpayers' equity claims, concluding that Taxpayers had an adequate legal remedy, viz., an appeal *de novo* from the Board's decision to the trial court, including the appointment of a Board of Viewers. It is true that equity jurisdiction will not lie where the litigant has an adequate legal remedy; however, I cannot conclude that Taxpayers have an adequate legal remedy in this case.

## I. Multiple Duplicative Lawsuits

In *Pentlong Corporation v. GLS Capital, Inc.*, 573 Pa. 34, 43–44, 820 A.2d 1240, 1245–46 (2003) (emphasis added) (citations omitted), our supreme court stated:

> In most circumstances, where a legal remedy exists, a court is divested of equity jurisdiction. *However, where the legal remedy cannot afford "full, perfect and complete" relief, "equity extends its jurisdiction in the furtherance of justice."* Thus, in order to determine whether equity jurisdiction is proper in the face of an existing legal or statutory remedy, we must determine if the legal remedy available to the plaintiff is adequate and complete. *Where, for instance, a legal remedy would result in a multiplicity of duplicative lawsuits and, in contrast, an action in equity would provide a tidy global resolution, this Court has found the legal remedy to be inadequate.*

This case involves three named plaintiffs: the Kowenhovens, the DeWitts and the Holtgravers. The majority would have *each* of these three plaintiffs file appeals *de novo* with the trial court. Initially, the trial court would appoint three Boards of Viewers, one for each of the appeals, pursuant to Rule A503(h) of the Allegheny County Court Rules (Rules). Under Rule A503(j), the Boards of Viewers would oversee the conciliation process for the three appeals. During conciliation, if the Boards of Viewers were to decide that the interests of justice would not be served by holding hearings, the Boards of Viewers would recommend that the appeals be placed on a non-jury trial list. Rule A503(j)(4). If the Boards of Viewers were to make such a recommendation in these three cases because of the due process issue, the trial court would be compelled to address multiple duplicative appeals.

If the Boards of Viewers were to proceed with hearings under Rule A503(*l*), there would be additional duplicative proceedings. All of the hearings would begin with the Board's presentation of the "records" supporting its assessments.[1] Be-

---

1. In a *de novo* tax assessment appeal, the taxing authority presents its assessment rec-

ord into evidence, and the valuation contained therein is presumptively valid. *Appeal*

cause the assessments were based on non-record evidence, Taxpayers would object that the Board's "records" are tainted by due process violations. The Boards of Viewers would make rulings on that issue in each of the three cases and, eventually, file their reports with the trial court pursuant to Rule A503(m). If the trial court were to reject the due process rulings made by the Boards of Viewers, the trial court would remand the three tax assessment appeals to the Boards of Viewers for further proceedings under Rule A503(m).

Once the Boards of Viewers filed reports that were acceptable to the trial court, there would be even more duplicative proceedings. The losing parties in the three appeals would file objections pursuant to Rule A503(n). After the filing of briefs under Rules A503(o) and A503(p) and oral argument under Rule A503(q) in each case, the trial court would issue final orders under Rule A503(r). The losing parties would appeal to this court, and, if this court were to reverse the trial court's due process decisions, the individual cases would be remanded for further proceedings.

Given our supreme court's concern for multiple duplicative lawsuits, which simply delay resolution of the issue, inconvenience the parties and cause additional expense, I believe, unlike the majority, that the trial court should have exercised equity jurisdiction in this case.

Indeed, the majority seems to ignore the fact that this is a *class action* lawsuit, alleging that "*hundreds* of real estate tax assessment appeal decisions are tainted and corrupted" by the Board's consideration of non-record evidence. (R.R. at 20a–21a) (emphasis added). Thus, in addition to the three appeals by the named plaintiffs in this case, there could be hundreds of appeals *de novo* to the trial court raising the same due process question. *All* of those actions could be avoided with a tidy global resolution by the trial court.[2]

## II. Expertise

In *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County*, 459 Pa. 268, 328 A.2d 819 (1974), our supreme court stated that, in deciding whether to exercise equity jurisdiction, a court must consider whether there is a need for the administrative agency to "throw light on the issue through exercise of its specialized fact-finding function or application of its administrative expertise." *Id.* at 281, 328 A.2d at 825. Where the specialized proceedings would be of little, if any, utility in determining the issue raised, "[w]hatever benefit might be derived from the filing of individual appeals ... would be far outweighed by the inconvenience, delay and expense involved." *Id.*

Here, the issue is whether the Board's consideration of non-record evidence violates the due process rights of litigants. Deciding this strictly legal question does

---

of *Marple Springfield Center, Inc.*, 654 A.2d 635 (Pa.Cmwlth.), *appeal denied*, 542 Pa. 679, 668 A.2d 1140 (1995). Here, the Board would present the non-record evidence as part of its assessment "record," and the Board's valuation based on the non-record evidence would be presumptively valid. The burden would be on Taxpayers to rebut the evidence. *Id.*

2. Ironically, the majority, in dicta, appears to have decided the due process question, com-

menting on the Board's memo with these words: "[S]uch a process appears to fly in the face of procedural due process notions." (Majority op. at 174.) Later, the majority states that "the Board's memo ... injected an improper element into the process of adjudication." (Majority op. at 176.) Such remarks leave little doubt that the Board's process is constitutionally deficient.

*not* involve the expertise of Boards of Viewers. Thus, in my view, specialized proceedings before Boards of Viewers would offer *nothing* towards a resolution of the issue presented here. If the expertise of Boards of Viewers is not needed, I fail to see why this court should require Taxpayers to proceed before Boards of Viewers.

### III. Complete Relief

As indicated above, if a legal remedy cannot afford full, perfect and complete relief, equity extends its jurisdiction in the furtherance of justice. *Pentlong.* As stated, this is a class action lawsuit. Among other things, Taxpayers seek an order requiring the Board to re-decide *all* tax assessment appeals in which the Board considered non-record evidence. (R.R. at 23a–24a.) In other words, the named plaintiffs here do *not* seek relief *only* for themselves. Because Taxpayers cannot obtain the complete relief they seek here by filing *individual* appeals *de novo* with the trial court, I conclude that the legal remedy is inadequate.

### IV. As Applied

In dismissing Taxpayers' equitable claims, the trial court relied upon *Borough of Green Tree,* as discussed by this court in dicta in *Jordan v. Fayette County Board of Assessment Appeals,* 782 A.2d 642 (Pa. Cmwlth.2001) *(en banc).* I submit that the trial court was misled by *Jordan.*

In *Jordan,* this court stated that, under *Borough of Green Tree,* the exercise of equity jurisdiction is not appropriate where a constitutional challenge is raised to the **application** of a tax statute. However, since *Borough of Green Tree,* this court, even sitting as an *en banc* panel, has exercised equity jurisdiction in cases where a constitutional challenge was raised to the application of a tax statute; moreover, our supreme court has declined to

review those decisions. *See, e.g., Millcreek Township School District v. County of Erie,* 714 A.2d 1095 (Pa.Cmwlth.1998), *appeal denied,* —— Pa. ——, —— A.2d —— (No. 547 W.D. Alloc. Dkt.1998, filed March 5, 1999); and *City of Harrisburg v. Dauphin County Board of Assessment Appeals,* 677 A.2d 350 (Pa.Cmwlth.1996) *(en banc), appeal denied,* 548 Pa. 620, 693 A.2d 590 (1997). My review of *Borough of Green Tree* indicates our supreme court did *not* preclude the exercise of equity jurisdiction in cases where a constitutional challenge is raised to the application of a tax statute.

The question before our supreme court in *Borough of Green Tree* was whether, in determining the propriety of equity jurisdiction, it was necessary to consider the existence of an adequate legal remedy. Acknowledging inconsistent case law on the matter, the court adopted the holding expressed in *Rochester & Pittsburgh Coal Company v. Board of Assessment & Revision of Taxes of Indiana County,* 438 Pa. 506, 266 A.2d 78 (1970), as follows: "[W]hat is required to confer jurisdiction on an equity court is the existence of a substantial question of constitutionality (and not a mere allegation) and the absence of an adequate statutory remedy." *Borough of Green Tree,* 459 Pa. at 274, 328 A.2d at 822 (quoting *Rochester,* 438 Pa. at 508, 266 A.2d at 79) (emphasis omitted). The court then stated:

> We have, however, at the same time recognized that the above rule is not to be unthinkingly applied, but rather that exception will be made where the statutory remedy is pointless or inadequate.... Our approach has been, in effect, a flexible one, such as that advocated by Prof. Jaffe: "Where the administrative process has nothing to contribute to the decision of the issue and there are no special reasons for postponing its

immediate decision, exhaustion should not be required."

*Borough of Green Tree*, 459 Pa. at 278–79, 328 A.2d at 824. Discussing the application of the rule, the court stated that "*generally* ... the more direct the attack on the statute, the more likely it is that exercise of equitable jurisdiction will not damage the role of the administrative agency...." *Id.* at 281, 328 A.2d at 825 (emphasis added).

In other words, in determining the propriety of equity jurisdiction, the focus of the inquiry is *not* on the type of constitutional attack, i.e., facial or as applied. Rather, the focus is on the need for the Board of Viewers' expertise in deciding the issues. Thus, as a general rule, the Board of Viewers is not needed where the enabling legislation is under direct attack. The reason is obvious; such an attack involves a strictly legal question. Likewise, here, the due process issue raised by Taxpayers is a strictly legal question. Although it is not a direct attack on legislation, it is apparent that the expertise of the Board of Viewers is not needed to decide the issue.

Accordingly, unlike the majority, I would reverse the trial court's dismissal of Taxpayers' equity claims and remand for further proceedings.